COURT OF CHANCERY
OF THE
STATE OF DELAWARE

DONALD F. PARSONS, JR.
VICE CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: October 23, 2014
Date Decided: December 8, 2014

Stephen B. Brauerman, Esq.
Vanessa R. Tiradentes, Esq.
Sara E. Bussiere, Esq.
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

Kurt M. Heyman, Esq.
Melissa N. Donimirski, Esq.
Proctor Heyman LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801

Ms. Leilani Zutrau
229 McKinley Parkway
Mineola, NY 11501

Re: *Zutrau v. Jansing and ICE Systems, Inc.*
Civil Action No. 7457-VCP

Dear Counsel and Ms. Zutrau:

On August 27, 2014, Bayard, P.A. ("Bayard") moved to withdraw as counsel for Plaintiff, Leilani Zutrau ("Plaintiff" or "Zutrau"). Bayard also requested a charging lien in the amount of roughly $300,000. Briefing on Bayard's motion concluded on September 19, and the Court heard oral argument on pending motions in this case on October 23. While Plaintiff does not oppose Bayard's withdrawal, she does oppose the entry of a charging lien. On November 3, I granted Bayard's motion

to withdraw without prejudice to the parties' conflicting arguments on the motion for a charging lien. This Letter Opinion constitutes my ruling on that motion. For the reasons that follow, I find that a charging lien is appropriate, but not in the amount Bayard requests.

"An attorney's special or charging lien is an equitable right to have costs advanced and attorney's fees secured by the judgment entered in the suit wherein the costs were advanced and the fee earned."[1] The Delaware Supreme Court recently held that the charging lien was well established at common law and that Delaware, which has no relevant statute on the issue, recognizes the common law right of an attorney to assert a charging lien.[2] In that case, the Supreme Court stated that the charging lien "rests on the 'theory that one should not be permitted to profit by the result of litigation without satisfying the demand of his attorney.'"[3]

Bayard's motion for a charging lien presents three issues: (1) whether an alleged agreement between the parties precludes the entry of a charging lien; (2)

---

[1] 7A C.J.S. *Attorney & Client* § 446 (West 2014).

[2] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 340-42 (Del. 2012).

[3] *Id.* at 340 (quoting 2 EDWARD MARK THORNTON, A TREATISE ON ATTORNEYS AT LAW § 580 (1914)).

generally how the appropriate amount of a charging lien should be determined; and (3) whether the costs of experts retained on behalf of Plaintiff can be included in the calculation. I address these issues in turn.

## (1) The Parties' Agreement

The relationship between Plaintiff and Bayard was governed by an engagement letter dated December 27, 2012, which appears to have been signed by Zutrau on January 5, 2013 (the "Engagement Letter"). That letter states: "The provisions of this agreement may not be modified except in a subsequent writing executed by the parties hereto." The parties do not dispute that, at some time in mid-2013, Plaintiff fell behind on her bills and was in breach of the Engagement Letter. An email chain appended to Zutrau's opposition brief indicates that the parties attempted to reach an agreement as to how to deal with the unpaid fees. In a September 17, 2013 email, Bayard offered to take the first $100,000 of any judgment and then work out a payment plan with Zutrau as to the remaining arrears (the "September 17 Email"). Later emails from Zutrau stated that the September 17 Email did not reflect, from her perspective, the parties' agreement.

Notwithstanding the clause in the Engagement Letter requiring any amendments to be in writing, Zutrau contends that the parties orally modified the

Engagement Letter.[4]   Bayard denies the existence of such a modification.

Furthermore, because any amendment had to be in writing, the purported oral

amendment would violate the terms of the Engagement Letter.  The only writings in

the record relevant to this question are the Engagement Letter and the subsequent

email chains.  By Zutrau's own admissions, as stated in her opposition brief and in

the emails attached to it, the September 17 Email did not reflect her understanding of

the parties' agreement on the unpaid fees.  Based on the evidence presented,

therefore, I find that the parties never reached a final, written agreement modifying

the Engagement Letter.  Accordingly, the Engagement Letter alone governed the

relationship between Zutrau and Bayard.

Relying on *Faraone v. Ramunno*,[5] Plaintiff asserts that Bayard cannot seek a

charging lien, because such a lien is equitable in nature and is granted only in the

absence of an express agreement.  The *Faraone* decision, however, did not involve

charging liens.[6]   In addition, although language from that case suggests that a

---

[4]   Zutrau has not specified the terms of this alleged amendment.

[5]   2005 WL 1654589, at *1 (Del. Super. June 22, 2005) ("A charging lien is an equitable lien which can be imposed in the absence of an expressed agreement.").

[6]   *Id.* ("This case is not about a charging lien.").

charging lien can be imposed when the parties lack an express agreement, the court did not hold that a charging lien *cannot* be granted when the parties have an express agreement. If it had, the *Faraone* case would be contrary to *Doroshow*, where the lawyers who sought, and obtained, a charging lien represented the plaintiffs pursuant to an express contingent fee agreement.[7] Moreover, black-letter law on charging liens suggests that a fee agreement between the attorney and the client is a prerequisite—not a bar—to the granting of a charging lien.[8] Zutrau's first argument, therefore, runs contrary to settled law.

### (2) Scope of the Charging Lien

Zutrau next advances the argument that, even if Bayard can assert a charging lien, it can do so only to the extent of the recovery created by Bayard's efforts. The underlying litigation in this case involved, among other things, Zutrau suing her former employer, ICE Systems, Inc. ("ICE"), and its CEO, John Jansing, alleging that

---

[7]    *Doroshow*, 36 A.3d at 339, 342.

[8]    7A C.J.S. *Attorney & Client* § 446 ("In order to give rise to a lien, a valid and enforceable contract for a fee must exist. Accordingly, when an attorney's fee agreement is unlawful, the attorney has no lien for services performed pursuant to that agreement.") (footnote omitted); 7 AM. JUR. 2D *Attorneys at Law* § 317 (West 2014) ("It is necessary to the existence of the lien that there be a valid contract for fees, either express or implied, entered into between the attorney and the client.").

her minority equity interest in ICE was undervalued when it was eliminated in a reverse stock split.[9] Zutrau initially was offered $495,779 for her shares, but objected to that amount as inadequate. Zutrau sued to obtain more. Under Zutrau's theory, Bayard has no claim on any judgment except to the extent it exceeds $495,779. Based on the current revised damage calculations of $876,329, that would mean Bayard could have a claim for a charging lien on a recovery of up to $380,550.

Zutrau's position has some appeal and, if this were a contingent fee case, Zutrau would have a compelling argument that the initial $495,779 should be excluded from the fee calculation because there was no material risk that she would recover less than that amount. The Engagement Letter, however, shows that Zutrau agreed to pay Bayard's hourly rates.[10] Bayard's fees were not contingent on the recovery and it would be owed the same amount of money whether Zutrau won or lost. It is no secret that litigation is expensive and that the costs of prosecution easily

---

[9] *Zutrau v. Jansing*, 2014 WL 3772859, at *2-14 (Del. Ch. July 31, 2014).

[10] Based on my review of the relevant cases, I find that the same principles apply to an unpaid hourly lawyer as apply to a lawyer whose recovery is contingent on the outcome: both are owed money at the conclusion of the case. *See Doroshow*, 36 A.3d at 342 ("Because Doroshow represented [the client] on a contingent fee basis, the law firm *had not been compensated before its work produced the funds*.") (emphasis added).

can exceed the recovery.[11]  Here, Zutrau was, and remains, obligated to pay Bayard's fees.  That the cost of prosecution conceivably could exceed the recovery does not excuse Zutrau from paying those fees.

Admittedly, there is language in the Delaware charging lien cases that suggests that a charging lien may be limited to the amount recovered *because of* the attorney's assistance.[12]  Here, that could mean starting with a "true" recovery of $380,550—*i.e.*, the approximate benefit Zutrau is likely to receive as a result of her challenge to the reverse stock split.  Plaintiff argues, however, that this amount should be reduced further by $116,678—the amount of fees she already paid—resulting in a net recovery or net benefit of $263,872.

---

[11]    *See* Robert G. Bone, *Modeling Frivolous Suits*, 145 U. PA. L. REV. 519, 529-33 (1997) (distinguishing frivolous lawsuits, which lack merit, from negative expected value lawsuits, which are meritorious but cost more to prosecute than any possible recovery).

[12]    *See Doroshow*, 36 A.3d at 343 (rejecting a proposed interpretation of a statute because it would "run counter to the rationale for an attorney's charging lien— that attorneys have a right to compensation *for funds recovered by their efforts*") (emphasis added); *Royal Ins. Co. v. Simon*, 174 A. 444, 446 (Del. Ch. 1934) (analogizing the charging lien to a mechanic's lien and describing one rationale for the charging lien as "the equity of an attorney to be paid his fees and expenses out of the judgment *in the securing and therefore creation of which* he had contributed of his services, skill and, in case of disbursements, of his money") (emphasis added).

Bayard denies that the amount of the benefit recovered is relevant to the scope of a charging lien. If it is, Bayard contends that: (1) the costs of this litigation, which the Court ordered Defendant to pay, must be deducted from the amount of fees and expenses Zutrau seeks to subtract out;[13] and (2) the value Bayard achieved by defeating Jansing's $60,307 counterclaim must be added to the recovery.[14] Thus, from Bayard's point of view, this litigation created a benefit to Zutrau exceeding $440,000.

For the reasons stated in the next section regarding expert fees, I conclude that the total amount of the charging lien that is appropriate in this case does not exceed Zutrau's lowest-possible net recovery of $263,872. As such, I need not answer the question, seemingly one of first impression in Delaware, of whether Bayard could

---

[13] On November 11, Bayard submitted a revised Bill of Costs totaling $40,750.10. Defendant disputes this amount, and seeks to limit the recoverable costs to $9,293.85. The ongoing controversy over the costs, however, is not material to the resolution of Bayard's motion for a charging lien.

[14] Although there is no Delaware precedent on the subject, several cases from other jurisdictions suggest that a charging lien does not arise for defense of a counterclaim. *See* 7A C.J.S. *Attorney & Client* § 454 ("The charging lien of an attorney may be restricted to services which the attorney performs on behalf of a client who asserts affirmatively a cause of action, claim, or counterclaim, as distinguished from services rendered for a negative purpose, such as to defeat or defend a cause of action, or claim, set up by a client's adversary.") (footnotes omitted).

assert a charging lien in excess of the partial amount of the judgment that resulted from the law firm's efforts.

### (3) The Expert Fees

Bayard seeks to include in its charging lien the costs of experts called on behalf of Zutrau at trial. Neither Zutrau nor Bayard cited any Delaware authority pertinent to this request and this issue also appears to be one of first impression in Delaware. Bayard argues that the concept underlying the charging lien—paying the costs necessary to prosecute the case—requires inclusion of the expert fees, because Bayard used its name and reputation to help retain Zutrau's experts. Bayard, however, has not paid, and is not contractually obligated to pay, these experts' fees. Only Zutrau is responsible for the fees incurred by her experts. Bayard apparently fears that Zutrau will not pay the experts. If that proves to be true and the expert fees are not included in the charging lien, Bayard alleges that its ability to retain experts in the future will be materially impaired.

I find Bayard's argument unpersuasive. The rationale underlying the Delaware charging lien cases is compensating the *attorney* for her efforts. Thus, the premise for imposing a charging lien is that an attorney is owed money. Here, if Zutrau fully had paid Bayard's bills, it presumably would have no basis for seeking a charging lien at all, let alone one for the additional roughly $100,000 it seeks for the experts.

There is no evidence in the record that Bayard is liable to the experts for their fees. I see no basis, therefore, for including those fees in the charging lien.[15]

**Conclusion**

For the foregoing reasons, I grant Bayard's motion for entry of a charging lien, but deny its request to include certain expert fees in the amount of that lien. Upon the entry of any judgment in this action, Bayard will have a charging lien in the amount of $200,000 against that judgment.[16] Bayard shall submit, within ten days of this Letter Opinion, appropriate documentation showing the fees and out-of-pocket expenses it incurred in this matter that remain unpaid. At such time as all unpaid fees and expenses of Bayard have been paid, the charging lien shall be extinguished.

---

[15] *Cf. Bero-Wachs v. Law Office of Logar & Pulver*, 157 P.3d 704, 708-09 (Nev. 2007) (interpreting the Nevada charging lien statute and finding that attorneys' lien did not apply to costs of forensic accountant when the law firm was not a principal to the contract with the accountant and, thus, bore no liability for the expert's fees).

[16] Bayard originally requested a charging lien in the amount of $300,000. Roughly $100,000 of that amount related to the experts' fees. Accordingly, it is unlikely that Bayard's unpaid fees and expenses will exceed $200,000. Arg. Tr. 11 (Stephen Brauerman: "I'd say all-in we are just under $200,000.").

**IT IS SO ORDERED.**

Sincerely,

*/s/ Donald F. Parsons, Jr.*

Donald F. Parsons, Jr.
Vice Chancellor

DFP/ptp