# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JASON WEBB,                )
                                    )

Claimant-Below, Appellant,   )    C.A. No. N23A-09-009 CEB
                                    )
                                    )

v.                             )
                                    )

STATE OF DELAWARE,       )
                                    )

Employer-Below, Appellee.   )

## ORDER

Submitted: February 29, 2024
Decided: May 9, 2024

*Upon Consideration of Appellant's Appeal of a Decision
of the Industrial Accident Board*
**AFFIRMED.**

Joel H. Fredricks, Esquire, Nitsche and Fredericks, LLC, Wilmington, Delaware. *Attorney for Claimant Below,Appellant.*

Gregory P. Skolnik, Esquire, Heckler & Frabizzio, Wilmington, Delaware. *Attorney for Employer-Below, Appellee.*

**BUTLER, R.J**.

This controversy is not really between the appellant, James Webb, and the State of Delaware, but rather involves Webb's attorney's fees and who is/was supposed to pay them. The Court finds that Webb's attorney waived his claim to attorney fees by settling the dispute without reservation of the issue and therefore rules against the Appellant.

## FACTS

Mr. Webb was an employee of the State of Delaware, working as a mechanic for the Delaware State Police. He claimed a work-related injury and was out of work for two separate periods, including spinal surgery and related medical expenses.

As a state employee, Webb received Short Term Disability ("STD") benefits while disengaged from his work. STD benefits are an employee benefit under the State's Disability Insurance Program, organized by the legislature and codified in Chapter 52A of Title 29 of the Delaware Code. It is administered by the State Employee Benefits Committee through the "Insurance Coverage Office" ("ICO").[1] This employee benefit is available at no cost to state employees who become disabled, regardless of whether the disability is "work related."

Webb also retained counsel to pursue a Worker's Compensation claim which is available to any employee who suffers a work-related injury. That program is

---

[1] 29 *Del. C.* § 5254.

1

administered through the Industrial Accident Board ("IAB") and includes administrative hearings and appeals, all codified in Chapter 23 of Title 19 of the Delaware Code. Counsel and Webb agreed in a fee agreement that counsel would receive a fee of 33 1/3% of the "total recovery from my employer or its insurance carrier."[2]

Appellant's counsel duly filed a claim with the IAB, seeking Temporary Total Disability ("TTD").[3]  The employer/State of Delaware/DSP retained counsel to represent it and discovery proceeded as it does.  Eventually, the Employer offered to settle the dispute.  The offer was 1) payment of $15,557 in back wages, 2) payment of all medical expenses, and 3) "no separate and/or additional attorney fee."[4]  The offer specifically noted that during this period Webb had received STD benefits for his absences from work and that those wages were paid out of the State benefits plan. "Per the usual procedure on such files," the worker's comp carrier agreed to pay out the worker's comp wage claim of $15,000, but it was to be escrowed in the Appellant's attorney's escrow account until the ICO asserted its right to recoupment of the STD benefits that had been paid to Webb.[5]

---

[2] Appellant's App. to Opening Br. on Appeal Ex. A5, Trans. ID 71812893 (Jan. 16, 2024).  All references to Appellant's Appendix to Opening Brief on Appeal are referred to as "A__".
[3] While not entirely clear from the record, apparently Mr. Webb was back to work by this time.
[4] A42.
[5] A41.

Webb's counsel confirmed acceptance of the terms via email.[6] The funds were duly deposited in Webb's attorney's escrow account. Along with the check came the specific caveat noted in the original offer letter, this time in bold print and underlined, that the funds were subject to an offset by the STD benefits that had been paid by the State benefits office and was being tendered to counsel "pending verification of the short term disability recoupment amount" and should not be disbursed until the state benefits office was paid its recoupment from the settlement. The claimant would be "permitted to keep any total disability amount left over after satisfying the short term disability recoupment."[7]

Then came the bad news. The short-term disability payments to Mr. Webb had totaled $15,486, virtually the entire amount recovered from the worker's compensation claim settlement. Instead of writing a check to the ICO as per the settlement agreement, Appellant's counsel sent the settlement check back to the worker's compensation carrier. According to counsel, "The insurance coverage office took the position that it will not accommodate the attorney fee for the recovery my office obtained." He further asserted what he termed an attorney's lien on the $15,000 paid by the worker's comp carrier to his client, saying "The attorney's lien

---

[6] Appendix to Employer-Below Appellee's Answering Brief Ex. B1-2, Trans. ID 71953901 (Feb. 5, 2024).
[7] A45.

is for one third of the total recovery. If this is distributed (by the compensation carrier) to the Insurance Coverage Office for reimbursement of the total disability payments without payment of the lien, I will file suit."[8]

## PROCEDURAL HISTORY

So, although the underlying dispute was settled, the attorney fee issue remained contested. The worker's compensation insurer filed a motion before the IAB to enforce the settlement agreement as per the agreement with Appellant's counsel. In opposition, Appellant's counsel took the position that he had achieved a result benefitting the ICO (by return of the STD payments to the ICO) and he had not been compensated for his efforts. And counsel said he knew that if the claimant refused to make the recoupment to the ICO, the ICO would garnish the employee's wages to offset for the recovery of the worker's compensation payments.[9]

The IAB held that:

> [T]he settlement contract is clear. Claimant was to be paid a sum certain for total disability to be held in escrow, and once the short term disability recoupment amount was provided, claimant's attorney was to repay same from the total disability payment, with claimant being entitled to the

---

[8] A54. Read in context, the Court believes counsel meant to say, "short term disability payments, not total disability payment."

[9] A61-62.

> remainder. No separate and/or additional medical witness or attorney fee was included in the agreement.[10]

Therefore, the Board ordered Appellant's counsel to void the tendered returned payment to the worker's comp carrier and instead issue a check to the ICO for the amount of recoupment as per the settlement agreement. Attorney fees were not awarded.

Appellant's counsel filed an appeal of the IAB's Order to this Court, complaining that the worker's comp carrier had no standing, and the Board had no jurisdiction to enforce the settlement agreement. The second argument is that the worker's comp carrier did not have a right to negotiate the STD recoupment.

## ANALYSIS

### A. The Board Acted Within Its Jurisdiction

Appellant argues first that the IAB "committed legal error" by granting the employer's request for declaratory relief because the employer lacked standing to enforce the right of the ICO to a set off. While it is true that the employer sought a declaratory judgment, it also moved to enforce of the settlement agreement— accomplishing the same thing. What the employer got was an order of enforcement of the settlement agreement. Whether the employer had standing to enforce the

---

[10] A57.

5

rights of the ICO is irrelevant. The IAB clearly has authority to enter orders enforcing settlement agreements.[11]

Appellant's corollary argument that the Board was without jurisdiction to adjudicate the attorney's "charging lien" is equally without merit. The Board clearly had authority to adjudicate the ICO's right to set off its payments against payments awarded by the worker's compensation carrier. That is what it did. That counsel had a contingent fee agreement with his client was not relevant to the Board's decision to enforce the settlement agreement.

## B. Appellant's Acceptance of the Settlement Agreement Waived Any Claim to a Contingent Attorney Fee

Appellant's counsel filed a claim with the IAB and then signed a deal with the worker's comp carrier to resolve a worker's comp claim that was then pending before the IAB. The deal called for payment of about $15,000 in lost wages, all medical expenses paid, recoupment to the ICO of the STD benefits and no additional fees for attorneys.

The Court understands Appellant's counsel's argument to be that he put effort into the worker's comp claim, developing evidence and witnesses and achieved a benefit, to wit: the settlement fund at issue paid by the worker's comp carrier. But the object of that effort from counsel's perspective—his contingent fee—vanished

___

[11] 19 *Del. C.* § 2344.

when the fund was wiped out by the ICO's claim to virtually the entire amount. In counsel's view, the ICO should be required to pay him the contingent fee since his labors benefitted the ICO, which would not have otherwise received any recoupment of the STD payments.

Appellant's counsel finds support for his position in *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Memorial Hospital*, a 2012 decision from the Delaware Supreme Court.[12] In that case, the Doroshow firm recovered a settlement of about $20,000 from the insurer of a tortfeasor in an auto accident. Nanticoke Hospital, however, had over $160,000 in unpaid hospital bills from the plaintiff. Nanticoke filed a lien against the settlement proceeds in Doroshow's hands. Although the decision ultimately relied upon an interpretation of the hospital lien statute—a statute not before us here—the Court did announce that "[b]ecause Delaware courts have chosen to follow the attorney's charging lien established in English common law, we reaffirm the existence of an attorney's right to assert a charging lien in Delaware."[13]

But worker's compensation statutes are distinctly *not* creatures of English common law—they are anything but. Demonstrating this point is *Decembre v.*

---

[12] 36 A.3d 336 (Del. 2012)
[13] *Id*. at 342.

*Perdue Farms, LLC,*[14] a case in which the worker's compensation claimant's attorney attempted to secure his contingent fee agreement on monies paid to a hospital by Perdue Farms on behalf of the claimant. The Court ruled that there could be no charging lien because there never were monies owed to the claimant—they were owed to the hospital. The Court said, "The charging lien is dealt with in the courts, not by statutorily-created boards. In fact, the Workers' Compensation Act has, in effect, created an attorney's charging lien by statutorily providing for attorney's fees under specific circumstances."[15]

The IAB's authority to award attorney fees appears limited by statute.[16] Indeed, Appellant's counsel seeks his attorney fee not through the authority of the Board, but through the authority of his private contingent fee agreement with the Appellant. Obviously, that is a matter between counsel and his client, not any of the other parties before the Court. The Court in *Decembre* above held that the charging lien is intended "to prevent Decembre from profiting by the result of litigation without satisfying the demand of her attorney," and therefore, she had no standing to seek payment from others.[17]

---

[14] 2017 WL 3188419, at *1 (Del. Super. July 25, 2017).
[15] *Id*. at *4.
[16] 19 *Del. C.* § 2320(10).
[17] *Decembre*, 2017 WL 3188419 at *4.

The settlement agreement here did not have to include a provision excluding attorney fees. The settlement agreement did not have to include a provision agreeing to allow the ICO to recoup the short-term disability payments. But it did both. Counsel now wants the Court to void the agreement, rewrite it, and rule that counsel can keep the STD money in his trust account and negotiate his fee with the ICO.

There is no disagreement that there was an agreement, and no disagreement as to the terms of the agreement. The Board has statutory authority to give effect to agreements between the parties.[18] And the Supreme Court has held that agreements settling worker's compensation claims may include provisions not directly related to the compensation itself.[19] This is so, according to the Court, because of the IAB's authority to give effect to agreements in litigation before it.[20]

It is clear to the Court that Appellant's counsel is not entitled to relief, at least not as presented in this appeal. Counsel made a settlement agreement with the compensation attorney that he would not seek attorney fees and that funds paid in STD benefits would be a credit against worker's compensation due to Appellant.

---

[18] *See* 19 *Del. C.* § 2344 ("Agreements on compensation or benefits; filing and approval; conclusiveness").

[19] *See Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 158 (Del. 1998) ("Where, as here, the parties entered into an agreement that provides for payments after the employee's death, there is no reason to limit the Board's authority to consider that agreement.").

[20] 19 *Del. C.* § 2344.

The employer's attorney did everything called for under the agreement. Appellant's counsel was properly ordered to comply with his end of the bargain.

Finding no error in the analysis of the Board, the Board's Order enforcing the settlement agreement is **AFFIRMED.**

**IT IS SO ORDERED.**

**/s/ Charles E. Butler**
**Charles E. Butler, Resident Judge**
