DOROSHOW, PASQUALE, KRAWITZ & BHAYA, Plaintiff below, Appellant,

v.

NANTICOKE MEMORIAL HOSPITAL, INC., a non-profit Corporation of the State of Delaware and Maria Acosta, an individual, Defendants Below, Appellees.

No. 41, 2011.

Supreme Court of Delaware.

Submitted: Nov. 30, 2011.
Decided: Jan. 23, 2012.

Arthur M. Krawitz (argued), Shakuntla L. Bhaya and Lindsey E. Anderson, Doroshow, Pasquale, Krawitz & Bhaya, Bear, Delaware, for appellant.

William J. Wade and Elizabeth R. He (argued), Richards, Layton & Finger, P.A., Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the Court en Banc.

STEELE, Chief Justice:

Nanticoke Memorial Hospital filed a $160,958 hospital lien for the cost of Maria Acosta's medical treatment resulting from a car accident on July 11, 2003. The law firm of Doroshow, Pasquale, Krawitz, & Bhaya represented Acosta in a personal injury claim against the tortfeasor who caused her injuries. Nationwide Assurance Company paid $19,671.49 to settle her claim. Nanticoke argues that its hospital lien attaches to the entirety of Acosta's recovery. Doroshow contends that the hospital lien does not attach until the attorney's fees have been deducted from the settlement fund. The Superior Court

ruled in favor of Nanticoke. We hold that an attorney's charging lien exists at common law and that Doroshow's agreed contingent fee must be deducted from the recovery before the hospital lien attaches. We therefore REVERSE.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 11, 2003, Maria Acosta suffered serious injuries resulting from an automobile accident in Sussex County, Delaware. Nanticoke Memorial Hospital treated Acosta for injuries resulting from the accident and charged $160,958 for its services. Because Acosta could not pay the bill, Nanticoke filed a Notice of Hospital Lien with the Sussex County Prothonotary on August 13, 2003. Nanticoke filed the lien pursuant to 25 *Del. C.* § 4301 et seq. in the amount of $160,958 against any recovery or judgment obtained by Acosta arising from the automobile accident. On August 14, 2003, the Superior Court formally recorded the lien as a public record.

Acosta retained the law firm of Doroshow, Pasquale, Krawitz & Bhaya to represent her interests in a personal injury action arising from the accident. The contingent fee agreement between Acosta and Doroshow provided that the law firm would receive 40 percent of any recovery plus costs. To settle Acosta's claims resulting from the accident, Nationwide Assurance Company paid $4,585 in January 2004 and $15,086.49 in February 2007. Nationwide made the checks payable to both Doroshow and Acosta. From the total $19,671.49 settlement, Doroshow deducted $8,052.02 in attorney's fees and costs and placed the balance in an IOLTA escrow account.

On March 26, 2009, Doroshow filed an interpleader complaint against Acosta and Nanticoke, seeking permission to release the amount of $11,619.47 in Doroshow's IOLTA account to the Superior Court for distribution. According to the complaint, Acosta has never given Doroshow permission to release the funds in the IOLTA escrow account to Nanticoke.

Acosta, then a *pro se* defendant in the interpleader action, wrote a letter to the Sussex County Prothonotary on April 23, 2009, as a form of answer in response to the interpleader complaint. Acosta wrote, "I also dispute section eleven. It states that I was aware that my lawyer had told me that the money was going to be given to me, would have to be negotiated with Nanticoke. I have to say that this is not true." [1] Because the trial judge issued a bench ruling, any factual questions Acosta's comment raised remain unanswered in the record.

On June 19, 2009, Nanticoke filed an answer to Doroshow's interpleader complaint, a counterclaim against Doroshow, and a cross claim against Acosta. Nanticoke's counterclaim sought a declaratory judgment that Nanticoke was entitled to the full recovery of the funds Doroshow received on behalf of its client Maria Acosta. Its cross claim contended that Acosta was not entitled to distribution of any of the funds at issue.

The Superior Court judge held a hearing and later entered an order, on January 3, 2011, in favor of Nanticoke. Despite notice, Acosta did not appear for the interpleader hearing. Her failure to appear should surprise no one—as only Doroshow and Nanticoke had an economic interest in the outcome. The order states that "the full recovery received from Nationwide Assurance Company by plaintiff Doroshow, on behalf of Defendant Acosta, in the sum of $19,671.49 shall be paid to Defendant

---

1. Appellant's Op. Br.App. A–6.

Nanticoke, in partial satisfaction of the Lien." [2] Doroshow has appealed to this Court.

## II. DISCUSSION

### A. Delaware common law recognizes an attorney's charging lien.

The threshold issue is whether legal authority supports an attorney's charging lien. We find that the right of an attorney to a charging lien is well established at common law. In *A Treatise on Attorneys at Law,* Thornton defines an attorney's charging lien as "the right of an attorney at law to recover compensation for his services from a fund recovered by his aid, and also the right to be protected by the court to the end that such recovery might be effected." [3] The lien's existence rests on the "theory that one should not be permitted to profit by the result of litigation without satisfying the demand of his attorney." [4] Because no Delaware statute directly addresses the issue here, we look to the common law.

The attorney's charging lien has a long common law tradition. [5] *Welsh v. Hole,* decided by Lord Chief Justice Mansfield in 1779, is the first case to authoritatively declare the existence of an attorney's charging lien. In *Welsh,* the Lord Chief Justice wrote:

> An attorney has a lien on the money recovered by his client for his bill of costs; if the money come to his hands, he may retain to the amount of his bill.

He may stop it *in transitu* if he can lay hold of it. If he apply to the court, they will prevent its being paid over till his demand is satisfied. I am inclined to go farther, and to hold that, if the attorney gave notice to the defendant not to pay till his bill should be discharged, a payment by the defendant after such notice would be in his own wrong, and like paying a debt that has been assigned, after notice. [6]

The remarkable similarity between Lord Mansfield's articulation of the attorney's lien and the modern day version can be explained by the fact that many United States jurisdictions, including Delaware, follow *Welsh.* [7]

In *Wilkins v. Carmichael,* Lord Mansfield described the continued development of the attorney's charging lien: "[C]ourts both of law and equity have now carried it so far, that an attorney or solicitor may obtain an order to stop his client from receiving money recovered in a suit in which he has been employed for him, till his bill is paid." [8] The reference to courts of law and equity implies that, although the lien is equitable in nature and based on general principles of justice, it can be asserted as a common law right. Both *Welsh* and *Wilkins* have been cited in Delaware cases and incorporated into our common law. [9]

Three cases trace the doctrinal progression of an attorney's charging lien in Dela-

---

2. Appellant's Op. Br.App. A–15.

3. 2 Edward Mark Thornton, *A Treatise on Attorneys at Law* § 578 (1914).

4. *Id.* § 580.

5. *Id.* § 579.

6. *Welsh v. Hole,* 1 Doug. (Eng.) 238, 99 Eng. Rep. 155.

7. Thornton, *supra,* § 579.

8. *Wilkins v. Carmichael,* 1 Dougl. (Eng.) 101, 105.

9. *See Polin v. Delmarva Poultry Corporation,* 188 A.2d 364 (Del.Super.Ct.1963).

ware. In *Royal Ins. Co. v. Simon*,[10] Simon recovered a judgment of $3,263.77 under fire insurance contracts, but the amount was not enough to cover claims from all of the creditors and the attorney. Percy Green, Simon's attorney who brought the litigation, filed a complaint to protect his portion of the recovery. Chancellor Wolcott held that despite the absence of a state statute governing the subject, an attorney's charging lien existed at common law. As support, the Chancellor cited the "preponderating weight of the authorities that an attorney is entitled to assert and enforce what is commonly described as his charging lien."[11] Finally, Chancellor Wolcott reasoned that the "prevalence of so many statutes in which the lien is recognized and its enforcement regulated is rather strong and convincing evidence of the justice and equity which underlie it."[12]

In *Polin v. Delmarva Poultry Corporation*, then Superior Court Judge Carey grappled with whether the attorney's charging lien could only be enforced in a court of equity. First, Judge Carey cited *Welsh* and *Wilkins* as common law recognition of the attorney's charging lien.[13] To the extent those cases described the right to a charging lien as "equitable," Judge Carey found that those opinions used the word "equitable" in the broad sense to mean "fair."[14] We agree that the common

law has long recognized the attorney's right to a charging lien and that common law courts have "used such means as are available to it to enforce it."[15]

*Di Loreto v. Tiber Holding Corporation* is the most recent case recognizing the attorney's charging lien. There, the DiLoretos were minority shareholders of Tiber, a closely held corporation. The Chancellor awarded DiLoreto specific performance of a mandatory buyback provision subject to certain setoffs in favor of Tiber against DiLoreto. The DiLoretos argued that their attorneys had charging liens against the judgment which took priority over the setoff. The Chancellor recognized the validity of an attorney's charging lien at common law but did not actually hold that one had been established: "For all of these reasons, any charging lien plaintiff's attorneys *may have successfully asserted* should not, in these circumstances, be given priority over the setoff."[16] According to the Chancellor's reasoning, even if the lien had existed, it did not have priority over the setoff under the "first in time, first in line" rule established in *Royal Insurance*.[17]

The Supreme Court of Delaware, in a per curiam opinion, affirmed but on different grounds.[18] We declined to adopt the

---

10. *Royal Ins. Co. v. Simon*, 174 A. 444 (Del. Ch.1934).

11. *Id.* at 446.

12. *Id.*

13. *Polin*, 188 A.2d at 366.

14. *Id.*

15. *Id.*

16. *Di Loreto v. Tiber Holding Corp.*, No. 16564, 2001 WL 221001 at *5 (Del.Ch. Feb. 23, 2001) (emphasis added).

17. *Id.* ("*Royal Insurance* provides the basis for how this Court must prioritize competing claims. Simply put, first in time equals first in line.").

18. The Supreme Court opinion is cited "DiLoreto" while the Court of Chancery opinion is cited "Di Loreto." When referring to the party, we use the version without the space. When referring to the Court of Chancery opinion, we cite the case as published.

first in time, first in line rule applied by the Chancellor: "With respect to the Court of Chancery's ruling that DiLoretos' attorney's charging lien does not have precedence over the prior Tiber judgments, we deem it unnecessary to endorse a bright line rule based on priority in time." [19] Instead, we affirmed the narrower ground that DiLoretos' attorney failed to successfully assert a charging lien in the first instance.[20]

 Because Delaware courts have chosen to follow the attorney's charging lien established in English common law, we reaffirm the existence of an attorney's right to assert a charging lien in Delaware. Doroshow provided Acosta legal services by representing her and achieving the Nationwide settlement. Because Doroshow represented Acosta on a contingent fee basis, the law firm had not been compensated before its work produced the funds. Therefore, Doroshow was entitled to assert an attorney's charging lien against the settlement fund.

## B. "Full and true consideration" is unambiguous because it is only subject to one reasonable interpretation—that the attorney's charging lien attaches before the hospital lien.

 Under 25 *Del. C.* § 4301, a charitable hospital shall have a lien on any amounts received as a result of a personal injury claim for reasonable treatment charges "to the extent of the full and true consideration paid or given to, or on behalf of, such injured person or his legal representative." [21] Doroshow contends that the statute is ambiguous because the General Assembly did not expressly provide for the priority of the hospital lien over the attorney's charging lien. Nanticoke responds that the statute is clear and unambiguous, because it does not provide an exception to clear language allowing a hospital lien to attach to the "full and true consideration" received by the injured client. We find that the phrase "true consideration" is subject to one reasonable interpretation, namely, the amount recovered after satisfying an attorney's charging lien.

 Statutory interpretation presents a question of law that we review *de novo*.[22] At the outset, a court must determine whether the provision in question is ambiguous. Ambiguity exists when a statute is capable of being reasonably interpreted in two or more different senses.[23] If the

---

19. *DiLoreto v. Tiber Holding Corp.*, 804 A.2d 1055, 1056 (Del.2001).

20. *Id.* at 1057 ("[T]he Court of Chancery examined all the circumstances of the fee arrangement, including the priority of the judgment, in refusing to recognize a charging lien. Clearly, there was no abuse of that discretion and accordingly we affirm.").

21. 25 *Del. C.* § 4301 ("Every charitable association, corporation or other institution maintaining a hospital in this State, supported in whole or in part by private charity, shall have a lien upon any and all claims or demands, all rights of action, suits, counterclaims of any person admitted to any such hospital and receiving treatment, care and maintenance therein which arise out of any personal injuries received in any such accident which any such injured person may have, assert or maintain against any such other person or corporation for damages, compensation or other claim on account of such injuries for the amount of the reasonable charges of such hospital for all medical treatment, care and nursing and maintenance of such injured person while in such hospital to the extent of the full and true consideration paid or given to, or on behalf of, such injured person or his legal representative.").

22. *Rapposelli v. State Farm Mut. Auto. Ins. Co.*, 988 A.2d 425, 427 (Del.2010).

23. *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del.2011) (citing *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 933 (Del.2007)).

statute is unambiguous, then there is no room for judicial interpretation and "the plain meaning of the statutory language controls." [24] If it is ambiguous, "we consider the statute as a whole, rather than in parts, and we read each section in light of all others to produce a harmonious whole." [25]

Merriam Webster's Dictionary provides nine different definitions of the word "true." Two definitions are relevant to our analysis. True can be defined as "being that which is the case rather than what is manifest or assumed." [26] A reasonable interpretation based on this definition suggests that true consideration is calculated after an attorney's charging lien because the "manifest or assumed" amount received as a "recovery" is not the actual amount the client receives. On the other hand, true is also defined as "legitimate, rightful," [27] which implies that true consideration is the entirety of the plaintiff's rightful recovery before an attorney's charging lien. Because the latter leads to an unreasonable result, we find that the former is the only reasonable interpretation of the statute. The true consideration, that "which is the case," is the amount that Acosta would actually receive.

■■■ Interpreting "true" to eliminate the attorney's charging lien leads to an absurd result. [28] According to the golden rule of statutory interpretation, "unreason-ableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result." [29] We read statutes by giving language its reasonable and suitable meaning while avoiding "patent absurdity." [30] It is a well established rule of statutory interpretation that the law favors rational and sensible construction. [31]

Because the $160,958 medical charges for Acosta's treatment are significantly higher than the $19,671.49 recovery from Nationwide, [32] Nanticoke's hospital lien would encompass the entire recovery. Therefore, interpreting "true" as meaning the entire rightful consideration obtained by Acosta would lead to the unreasonable and absurd result of denying Doroshow the compensation for legal services essential to obtaining that recovery. That interpretation runs counter to the rationale for an attorney's charging lien—that attorneys have a right to compensation for funds recovered by their efforts.

■■■ Furthermore, reading "true" to mean the client's entire rightful recovery, would yield surplusage in the phrase "full and true" consideration. In *Keeler v. Harford Mut. Ins. Co.*, we held that in order to determine the legislative intent of a statute, it is important "to give effect to

24. *Eliason v. Englehart*, 733 A.2d 944, 946 (Del.1999).

25. *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del.2011).

26. *Merriam Webster's Collegiate Dictionary* 1268 (10th ed. 1993).

27. *Id.*

28. *Reddy v. PMA Ins. Co.*, 20 A.3d 1281, 1287–89 (Del.2011).

29. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1247 (Del.1985).

30. *Moore v. Wilmington Hous. Auth.*, 619 A.2d 1166, 1173 (Del.1993).

31. *Stratton v. Am. Indep. Ins. Co.*, 2010 WL 3706617 at *13 (Del.Super. Sept. 16, 2010) (citing 2A Sutherland, Statutes & Statutory Construction, § 45:12 (7th ed. 2008)).

32. This is not an uncommon occurrence when the injured person is indigent and the tortfeasor has limited liability insurance.

the whole statute, and leave no part superfluous." [33] Furthermore, the General Assembly "is presumed to have inserted every provision into a legislative enactment for some useful purpose and construction." [34] We affirm the canon of statutory construction that every word chosen by the legislature (and often bargained for by interested constituent groups) must have meaning.

According to Merriam Webster's Dictionary, "full" is defined as "containing as much or as many as is possible or normal." [35] The term full consideration in this case would reasonably be interpreted as the entire amount of consideration provided in the settlement. By adding the word "true," the General Assembly intended that the hospital lien only attach to the remaining consideration after accounting for attorney's fees. A proper reading of the statute therefore yields only one reasonable interpretation—to be both "full and true," the hospital lien attached to the remainder of the recovery after the attorney's charging lien.

Finally, the statute states that the hospital lien will attach "to the extent of the full and true consideration paid or given to, or on behalf of, such injured person *or his legal representative.*" [36] In this case, the settlement checks were payable to both Acosta and Doroshow. One could argue that legal representative includes the injured person's attorney, and therefore the hospital lien attaches to *all* consideration given to the injured person or his attorney.

This argument holds no water, however, because the statutory term "legal representative" is a term of art that does not include Doroshow.

▮▮▮ Black's Law Dictionary defines a legal representative as a lawful representative or a personal representative.[37] Neither definition includes the client's attorney as part of the definition. A lawful representative is "(1) A legal heir. (2) An executor, administrator, or other legal representative." [38] Similarly, a personal representative is "A person who manages the legal affairs of another because of incapacity or death, such as the executor of an estate." [39] We hold that legal representative, as it is used in 25 *Del. C.* § 4301, denotes a person who manages the affairs of another because of incapacity or death, not a personal injury client's attorney. Accordingly, the hospital lien attaches to Acosta's remaining funds after the attorney's charging lien is satisfied.

C. **To the extent** *Di Loreto* **suggests that the existence of an attorney's charging lien depends on the first in time, first in line rule, it is overruled.**

▮▮▮ Nanticoke cites *Di Loreto v. Tiber Holding Corp.* for the proposition that charging liens are prioritized with competing liens on a first in time, first in line basis.[40] In *Di Loreto*, the Chancellor held that "*Royal Insurance* provides the basis for how this Court must prioritize competing claims. Simply put, first in time

**33.** *Keeler v. Harford Mut. Ins. Co.,* 672 A.2d 1012, 1016 (Del.1996).

**34.** *Colonial Ins. Co. of Wisconsin v. Ayers,* 772 A.2d 177, 181 (Del.2001) (citing *General Motors Corp. v. Burgess,* 545 A.2d 1186, 1191 (Del.1988) (internal citation omitted)).

**35.** *Merriam Webster's Collegiate Dictionary* 471 (10th ed. 1993).

**36.** 25 *Del. C.* § 4301 (emphasis added).

**37.** *Black's Law Dictionary* 915 (8th ed. 2004).

**38.** *Id.* at 1328.

**39.** *Id.*

**40.** Ans. Br. at 17.

equals first in line."[41] On appeal, this Court did not reach the question of priority and affirmed on other grounds.[42] Today, we hold that *Di Loreto's* interpretation of *Royal Insurance* is flawed. The attorney's charging lien rests on a higher level than all other liens and is not subject to a first in time, first in line rule.

In the 1934 case *Royal Insurance Co. v. Simon,* Louis Simon secured a judgment in Superior Court for $3,263.77. A variety of claimants, including Percy Green and Harry Price, asserted claims against Simon's judgment. Chancellor Wolcott held that Percy Green, Simon's attorney who conducted the suit, had a charging lien on the judgment that prevailed over the client and all other creditors: "If the question here were between Green and his client, Simon, the former's claim to a charging lien would prevail. It prevails with equal effectiveness as against Simon's attaching creditors."[43] The question is whether that holding was based on a first in time, first in line rule or on some other reasoning.

The key to understanding *Royal Insurance* is recognizing the two branch structure of the opinion.[44] In the first branch, the Chancellor established the common law basis for an attorney's charging lien and held that Green's charging lien prevailed over all others. "The conclusion on this branch of the case is that as against the attaching creditors Green has the first claim on the fund which the complainant has paid into court."[45] The Court's reasoning was not based on the timing of Green's lien but, rather, on the public policy that without the services and skill of the attorney, there would be no recovery.

> The theory upon which the so-called lien rests is variously stated. In some cases it is placed on the equity of an attorney to be paid his fees and expenses out of the judgment in the securing and therefore creation of which he had contributed of his services, skill and, in case of disbursements, of his money.[46]

There is no mention of a first in time, first in line rule or any timing based reasoning in this branch of the opinion.

Second and separately, Chancellor Wolcott considered Harry Price's lien in relation to other creditors by applying the first in time concept: "Can Simon's attaching creditors prevail over Price? It is to be noted that the attachments of the creditors (excepting three) are *posterior* to Price's assignment."[47] Therefore, in *Royal Insurance,* first in time, first in line applied only to determine the priority of creditors exclusive of and other than the attorney's charging lien. To the extent *Di Loreto* can be read to apply the first in time, first in line rule to the attorney's charging lien, it is overruled. Accordingly, the timing of Nanticoke's hospital lien, whether before or after Doroshow's attorney's charging lien, is irrelevant.

---

41. *Di Loreto v. Tiber Holding Corp.,* 2001 WL 221001 at *5 (Del.Ch. Feb. 23, 2001).

42. Because the attorney's charging lien had not been successfully established, it was not necessary for the Supreme Court to address the first in time, first in line rule. *DiLoreto v. Tiber Holding Corp.,* 804 A.2d 1055, 1057 (Del.2001).

43. *Royal Ins. Co. v. Simon,* 174 A. 444, 446 (Del.Ch.1934).

44. For young lawyers, the structure of the opinion can be just as important as the content in deciphering the meaning of a case.

45. *Royal Ins. Co.,* 174 A. at 446.

46. *Id.*

47. *Id.* at 447 (emphasis added).

### D. Because the question presented by this case implicates a host of public policy considerations, the General Assembly is better suited to provide an answer.

In this case, we must hold that Doroshow's charging lien attaches before Nanticoke's hospital lien, but because we do not sit as a superlegislature,[48] we will not address a variety of public policy arguments that should properly be considered by the General Assembly. First, how should Delaware balance the competing interests of the hospital lien and the attorney's charging lien? Second, will the use of hospital liens affect the amount of fees paid by the state for Medicaid? Third, would a system devoid of an attorney's charging lien result in a situation where a class of injured parties would have no incentive to file claims against wrongdoers?[49] Fourth, what are the societal consequences if the party at fault escapes liability from the failure to bring claims?

These policy questions, and no doubt others, should be debated by the General Assembly.

The factual scenario in this case highlights the need for the General Assembly to take action. To rectify this unfortunate situation, the General Assembly need only look to the statutes of other states. According to Doroshow's and Nanticoke's research, 41 states and the District of Columbia have hospital lien statutes. Of the 42 statutes, 31 states specifically address the issue of attorney's fees for the injured person's attorney. The statutes that refer to attorney's fees can be divided into three categories: (1) the hospital lien is subject to the attorney's lien;[50] (2) the hospital lien shall not interfere or prejudice the attorney's lien;[51] and (3) the attorney's lien has a percentage limit.[52] Out of respect for the legislative process, we urge the General Assembly to examine the policy issues and statutory examples from other jurisdictions.

---

**48.** *Delaware Solid Waste Auth. v. News–Journal Co.*, 480 A.2d 628, 634 (Del.1984).

**49.** Reading the statute as prohibiting the attachment of an attorney's charging lien also leads to an irrational and inefficient equilibrium. If we were to adopt Nanticoke's position, lawyers faced with similar situations in the future would decline to represent injured plaintiffs because there would be no chance of recovery for the clients or the attorneys. With no attorneys to represent the injured victim, the hospital receives no compensation for its services, thereby defeating the purpose of the hospital lien statute.

**50.** Alabama, ALA.CODE § 35–11–370 (1991); Alaska, ALASKA STAT. § 34.35.450–455 (2007); Colorado, COLO.REV.STAT. § 38–27–101 (2007); Georgia, GA.CODE ANN. § 44–14–470 (2003); Hawaii, HAW.REV.STAT. § 507–4 (2008); Indiana, IND.CODE. §§ 32–33–4–1, 2 (2002); Louisiana, LA.REV.STAT. ANN. § 9:4752 (2009); Maine, ME.REV.STAT. ANN. Tit. 10 § 3411 (2009); Maryland, MD.CODE ANN., COM. LAW § 16–601 (2002); Massachusetts, MASS. GEN. LAWS Ch. 111, § 70A (2003); Minnesota, MINN.STAT. § 514.68 (2002); Missouri, MO.REV.

STAT. § 430.250 (1992); Montana, MONT.CODE ANN. § 71–3–1114 (2009); Nebraska, NEB.REV. STAT. § 52–401 (2009); Nevada, NEV.REV.STAT. § 108.590–600 (2000); New Mexico, N.M. STAT. § 48–8–1 (2003); New York, N.Y. LIEN LAW § 189 (McKinney 2007); Oklahoma, OKLA. STAT. Tit. 42 § 43 (2001); Oregon, OR. REV.STAT. § 87.555–.560 (2003); Rhode Island, R.I. GEN. LAWS § 9–3–4 (2006); Tennessee, TENN.CODE ANN. § 29–22–101 (2002); Utah, UTAH CODE ANN. § 38–7–1 (2004); Vermont, VT. STAT. ANN. Tit. 18, § 2251 (2007); Virginia, VA.CODE ANN. §§ 8.01–66.2–66.3 (2001).

**51.** Arkansas, ARK CODE ANN. §§ 18–46–103, 104 (2004); Iowa, IOWA CODE § 582.1A (1992); Kansas, KAN. STAT. ANN. § 65–406 (2008); South Dakota, S.D. CODIFIED LAWS §§ 44–12–1, 2 (2004); Wisconsin, WIS. STAT. § 779.80 (2001).

**52.** Illinois, 770 ILL. COMP. STAT. 23/10 (2003); North Carolina, N.C. GEN STAT. § 44–50 (2000).

## III. CONCLUSION

The judgment of the Superior Court is reversed.