**EFiled: Feb 26 2016 02:48PM EST**
**Transaction ID 58636615**
**Case No. 2399-VCN**

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

February 26, 2016

Evan O. Williford, Esquire
The Williford Firm LLC
901 North Market Street, Suite 800
Wilmington, DE 19801

David S. Eagle, Esquire
Klehr Harrison Harvey Branzburg LLP
919 North Market Street, Suite 100
Wilmington, DE 19801

Re: *Sutherland v. Sutherland*
C.A. No. 2399-VCN
Date Submitted: November 9, 2015

Dear Counsel:

Plaintiff Martha S. Sutherland ("Sutherland") sued two of her brothers regarding their handling of the family businesses. That effort, which spanned a decade, had some minor success, but otherwise would be perceived as a failure. Because of that minor success, the Court awarded Sutherland $275,000 for her attorneys' fees and expenses.[1]

---

[1] *Sutherland v. Sutherland*, 2014 WL 3906500, at *5 (Del. Ch. July 31, 2014).

When her efforts began in 2004, she was represented by Intervenor Katten Muchin Rosenman LLP ("Katten"). One of her lawyers there, Stewart Kusper, Esq. ("Kusper"), left the firm in the spring of 2011 and continued to represent her. In April 2011, Katten transferred Sutherland's files to Kusper's new firm.[2] From then on, Katten performed no (or substantially no) services for Sutherland. All of the benefits achieved by Sutherland were accomplished while Katten was representing her.

Katten had billed Sutherland regularly for its services. She paid approximately $2.7 million out of approximately $3.5 million in total billings from Katten, and still owes $766,166.75.[3] Katten intervened in this action to assert an attorney's charging lien against the fees awarded by the Court. Sutherland claims entitlement to those fees.[4]

---

[2] Aff. of Bonita L. Stone in Supp. of Intervenor Katten Muchin Rosenman LLP's Mot. for Summ. J. ("Stone Aff.") ¶ 9; *id.* Ex. F.

[3] Stone Aff. ¶¶ 4–6; *id.* Ex. D. These fees are based on Katten's services regarding Sutherland's litigation in Delaware. They do not include work done on companion litigation elsewhere.

[4] Neither Kusper nor his new firm(s) has joined in this conflict. Thus, there is no debate about priority of (or allocation between) competing charging liens.

Katten has moved for summary judgment on its right to an attorney's charging lien which would cover all of the Court's fee award.[5]

In March 2004, Sutherland initiated an effort under 8 *Del. C.* § 220 to inspect the books and records of the family businesses. At that time, Sutherland and Katten may have entered into a written fee agreement that cannot now be found.[6] Whether there was a written agreement, however, is not determinative because of the duration of the Katten-Sutherland attorney-client relationship, the regular monthly billings, and the significant sums that Sutherland paid over several years to Katten.[7]

In September 2006, Sutherland filed a derivative and double-derivative action against her brothers on behalf of the family businesses. That litigation was protracted. The Special Litigation Committee process was cumbersome, but

---

[5] Intervenor Katten Muchin Rosenman LLP's Mot. for Summ. J. on Its Verified Pet. for a Charging Lien. Katten has offered no other theory for attaching or placing a lien on the funds that are due Sutherland.

[6] Katten insists that there was a written fee agreement. Sutherland denies (or at least cannot remember) its existence. Perhaps the passage of time or the transfer of files by Katten to Kusper's new firm would explain the loss of any written agreement.

[7] It is, of course, desirable, appropriate, and sometimes necessary for lawyers and clients to memorialize in a written agreement their common understanding regarding the scope of representation and the fee arrangement.

Katten's (and Sutherland's) efforts resulted in eliminating the brothers' expectations of two-year's salary if terminated for cause and a modification (favorable to the family businesses) of provisions allowing the brothers to compete with the family businesses. These benefits were all achieved (adopted by the boards of the family companies) by 2007, years before Katten's departure. In 2010, the Court granted summary judgment against Sutherland on most of her claims.[8] The remaining claim was tried in November 2012.[9]

In seeking an award of fees, Sutherland relied upon Katten's invoices which detailed its services performed for her and its expenses incurred in her behalf.[10] Indeed, in making an award of fees to Sutherland, the Court relied upon Katten's invoices as sponsored by Sutherland.[11]

---

[8] *Sutherland v. Sutherland*, 2010 WL 1838968 (Del. Ch. May 3, 2010).

[9] *Sutherland v. Sutherland*, 2013 WL 2362263, at *1–4 (Del. Ch. May 30, 2013).

[10] Kusper not only argued the fee application on behalf of Sutherland, but he had also been deeply involved in the work which Katten performed on her behalf while he practiced at Katten.

[11] *Sutherland*, 2014 WL 3906500, at *1–2.

Summary judgment is appropriate if no material facts are in dispute and the moving party is entitled to judgment as a matter of law.[12]

An attorney's charging lien is not a novel concept. An attorney's charging lien is "the right of an attorney at law to recover compensation for his services from a fund recovered by his aid, and also the right to be protected by the court to the end that such recovery might be effected."[13] The theoretical basis for the lien is "that one should not be permitted to profit by the result of litigation without satisfying the demand of his attorney."[14] Delaware recognizes the attorney's charging lien in both courts of law and courts of equity. Although frequently

---

[12] Ct. Ch. R. 56. Sutherland has raised no questions of material fact as to Katten's contention that she owes the firm at least $275,000, the amount of the fee award. There may have been disagreements between Katten and Sutherland, but Sutherland has not offered a factual basis for concluding that she was "overbilled" by an amount that would reduce the amount she owes below the fee award. *See* Aff. of Martha S. Sutherland in Opp'n to Intervenor Katten Muchin Rosenman LLP's Mot. for Summ. J. ¶¶ 2–5.

[13] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem. Hosp., Inc.*, 36 A.3d 336, 340 (Del. 2012) (quoting 2 Edward Mark Thornton, *A Treatise on Attorneys at Law* § 578 (1914).

[14] *Id.* (quoting 2 Edward Mark Thornton, *A Treatise on Attorneys at Law* § 580 (1914).

referred to as equitable remedy, the use of the word equitable in describing the lien has come "in the broad sense to mean 'fair'"[15]

The fees and expenses for which Katten seeks a charging lien were incurred after 2008; that is, the fees and expenses were incurred after the derivative benefits for the family businesses upon which the Court's fee award was premised had been achieved.[16] Thus, the principal question is: may a lawyer obtain a charging lien upon a recovery by the (former) client based on the work done by the lawyer if the lawyer has already been paid for the work that led to that recovery? Stated differently, may a lawyer secure a charging lien for work done after the benefits supporting a fee award (in this instance, the derivative benefits accruing to the family businesses) were achieved if the lawyer's work which achieved the benefits has been paid for?[17]

---

[15] *Id.* at 341 (quoting *Polin v. Delmarva Poultry Corp.*, 188 A.2d 364, 366 (Del. Super. 1963)).

[16] Sutherland paid Katten's fees until after the derivative benefits had been obtained.

[17] The scope of the dispute between Katten and Sutherland is not as expansive as it once might have been. For example, Sutherland does not contend that the arrangement with Katten was in her individual (and not as trustee) capacity; that the fee agreement might have had venue or arbitration provisions; or that Katten

The purpose of a charging lien is to make sure that the client does not avoid paying her lawyer for the benefits she obtained.[18] Katten has been paid in full for its invoices based on its work that provided both benefits to the family companies and the basis for the Court's fee award.[19] In essence, Katten seeks imposition of a charging lien for work which caused no benefit and has no connection to the recovery, other than having occurred in the same litigation. The Court in *Doroshow* recognized that because a law firm represented a client on a contingent fee basis, "the law firm had not been compensated before its work produced the funds."[20] Seeking a charging lien for work which produced no benefit when the law firm has already been paid for the work which produced the benefit (whether

---

had improperly allocated her fee payments between litigation in Delaware and elsewhere.

[18] "[T]he rationale for an attorney's charging lien [is] that attorneys have a right to compensation for funds recovered by their efforts." *Doroshow*, 36 A.3d at 343.

[19] Frequently, allocation will be difficult because the recovery typically comes at the end of the litigation and linking any benefit to any specific effort would be imprecise.

[20] *Doroshow*, 36 A.3d at 342.

the benefit for the family corporation or the corresponding fee award) is

inconsistent with the theoretical underpinnings of the attorney's charging lien.[21]

Accordingly, Katten's motion for summary judgment is denied.[22]

**IT IS SO ORDERED**.

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc: Robert S. Saunders, Esquire
   S. Mark Hurd, Esquire
   Register in Chancery-K

---

[21] In addition, because Sutherland paid Katten for the services which generated the benefit, the equitable or "fair" approach would be to allow her reimbursement for those fees which she paid.

Katten expresses concern that this result could lead to gamesmanship: of clients who would selectively pay invoices that are connected to legal efforts that were in some sense successful. Perhaps evidence of that sort would change the Court's analysis, grounded as it is in notions of equity and fairness, but no such evidence has been offered in this action.

[22] This is a dispute about payment of Katten's fees from a specific fund. It does not impact Katten's right to pursue Sutherland personally for whatever she may owe it.