# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KATTEN MUCHIN ROSENMAN LLP, | § | |
| | § | No. 151, 2016 |
| Intervenor Below, | § | |
| Appellant, | § | Court Below: Court of |
| | § | Chancery of the State of |
| v. | § | Delaware |
| | § | |
| MARTHA S. SUTHERLAND as Trustee | § | C.A. No. 2399-VCS |
| of the Martha S. Sutherland Revocable Trust | § | |
| dated August 18, 1976, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: December 14, 2016
Decided: January 3, 2017

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon appeal from the Court of Chancery. **REVERSED.**

David S. Eagle, Esquire, Sean M. Brennecke, Esquire, Klehr Harrison Harvey Branzburg LLP, Wilmington, Delaware; Ted S. Helwig, Esquire, Bonita L. Stone, Esquire, (*Argued*), Katten Muchin Rosenman LLP, Chicago, Illinois, Attorneys for Intervenor Below, Appellant, Katten Muchin Rosenman LLP.

Evan Williford, Esquire, Andrew J. Huber, Esquire, The Williford Law Firm LLC, Wilmington, Delaware; Norman J. Lerum, Esquire, (*Argued*), Catherine Lerum, Esquire, Norman J. Lerum, P.C., Chicago, Illinois, Attorneys for Plaintiff Below, Appellee, Martha S. Sutherland.

**STRINE**, Chief Justice:

This appeal concerns a dispute over when a charging lien may be imposed on a judgment to recover unpaid attorney's fees. In this opinion, we embrace the definition that a charging lien is "an equitable right to have costs advanced and attorney's fees secured by the judgment entered in the suit wherein the costs were advanced and the fee earned,"[1] which had been previously adopted by the Court of Chancery in its earlier decision in *Zutrau v. Jansing*.[2] In the matter before us, the Vice Chancellor supplemented the prerequisites for a charging lien to confine an attorney to her unpaid fees that are directly connected to the recovery she obtains on her client's behalf. But, that supplement is, to our minds, inequitable because it denies an attorney full compensation for the work she contracted to do on behalf of her client and thus undermines the utility of a charging lien in encouraging counsel to provide legal services to clients by ensuring them that their contractual right to a fee will be upheld by the judiciary. Accordingly, we reverse.

## I.

Sutherland Lumber-Southwest, Inc. and its sole stockholder, Dardanelle Timber Co., are family owned and operated companies in the business of operating retail lumber yards and stores. For simplicity purposes, Sutherland Lumber-Southwest and Dardanelle are collectively referred to as "the Sutherland Lumber

---

[1] 7A C.J.S. *Attorney & Client* § 523 (Westlaw 2016).
[2] 2014 WL 7013578 (Del. Ch. Dec. 8, 2014), *aff'd*, 123 A.3d 938 (Del. 2015), *reargument denied* (Sept. 17, 2015), *cert. denied*, 136 S. Ct. 1198 (2016).

Companies." Dwight D. Sutherland, Sr.—the founder and president of the Sutherland Lumber Companies—split the common stock of Dardanelle evenly among his four children: Dwight Jr., Perry, Todd, and defendant Martha.[3] Dwight Sr. retained ownership of all of Dardanelle's preferred voting stock. As of 2001, Dwight Jr., Perry, Todd, and Martha served as directors on the Sutherland-Lumber Southwest board with Dwight Sr. and his wife, Norma. Only Dwight Sr., Dwight Jr., Perry, and Todd served as directors on the Dardanelle board. In 2002, Dwight Jr. resigned from both boards.

When Dwight Sr. died in late 2003, Perry acquired the power to vote the preferred shares.[4] Thereafter, Perry and Todd allied together and, as a result of their common shares and Perry's power to vote the preferred shares, they controlled the Sutherland Lumber Companies.[5] In February 2004, Perry and Todd ousted Martha from her position as a director on the Sutherland Lumber-Southwest board and replaced her with their cousin, Mark Sutherland. That same day, the Sutherland Lumber Companies executed employment agreements with Perry and Todd. Perry, who previously served as vice-president of the Sutherland Lumber Companies, was appointed President and CEO of the Sutherland Lumber

---

[3] To avoid confusion, the members of the Sutherland family are referred to by their first names.
[4] After Dwight Sr. passed away, the preferred stock, which carried voting rights, was transferred to a trust for Dwight Sr.'s wife's benefit. Perry was the trustee of the trust, and therefore, he obtained the power to vote the preferred shares. *Sutherland v. Sutherland*, 958 A.2d 235, 237 (Del. Ch. 2008).
[5] *Id.*

2

Companies, and Todd was appointed vice-president and secretary of Sutherland Lumber-Southwest.[6]

Martha reacted to her ouster by, among other things, litigating. She first retained plaintiff Katten Muchin Rosenman LLP to represent her in a § 220 books and records request of the Sutherland Lumber Companies.[7] Although Martha and Katten disagree over whether they entered into a written fee agreement, the parties agree that Katten was not providing its services on a contingency fee basis and was instead entitled to fees on an hourly rate basis and to reimbursement of its expenses.[8] Indeed, Katten sent Martha monthly invoices based on hourly billing, which Martha paid for several years.[9]

In 2006, Martha, with Katten as her counsel, filed a derivative and double-derivative action against Perry, Todd, and Mark alleging, among other things, that Perry's and Todd's employment agreements with the Sutherland Lumber Companies were a result of self dealing. In response, the boards of the Sutherland Lumber Companies added a new director, Bryan Jeffrey, and designated him as a

---

[6] *Sutherland v. Dardanelle Timber Co.*, 2006 WL 1451531, at *2 (Del. Ch. May 16, 2006).
[7] 8 *Del. C.* § 220.
[8] Oral Argument at 42:57, *Katten Muchin Rosenman LLP v. Sutherland*, No. 151, 2016 (Del. Dec. 14, 2016).
[9] Katten insists that it entered into a written fee agreement with Martha. App. to Opening Br. at A0239 (Aff. of Bonita L. Stone). Martha, however, maintains that "to the best of [her] recollection, [she] did not sign an engagement letter." *Id.* at A0998 (Aff. of Martha S. Sutherland).

one-person special litigation committee.[10]  Jeffrey investigated the merits of Martha's complaint and concluded that the Sutherland Lumber Companies should not pursue her claims, but he did make recommendations that Perry's and Todd's employment agreements should be amended.  In July 2007, the Sutherland Lumber Companies' boards eliminated Perry's and Todd's guaranteed two-year's salary if terminated for cause, modified provisions in Perry's and Todd's employment agreements that previously allowed them to compete with the Sutherland Lumber Companies, and imposed caps on the amount of services Perry and Todd could receive at the Sutherland Lumber Companies' expense.

By 2011, Martha accrued $766,166.75 in unpaid attorney's fees for services that Katten provided in this litigation between 2009 and 2011.  In the spring of 2011, Katten withdrew as counsel.  One of Martha's attorneys from Katten, Stewart Kusper, left the firm and continued to represent her.

After Martha's litigation concluded in 2012—without her securing any additional relief on behalf of the Sutherland Lumber Companies—she sought an award of attorney's fees from the Sutherland Lumber Companies for all of her fees arising from the § 220 action and from overcoming the special litigation committee's investigation and recommendation to terminate the litigation, plus $25,000 in fees for defending against the summary judgment argument aimed at

---

[10] *Sutherland v. Sutherland*, 2010 WL 1838968, at \*3 (Del. Ch. May 3, 2010).

4

the employment agreement claim. In total, Martha asked for $1.4 million in attorney's fees and, in doing so, she used Katten's invoices that detailed the services it provided to her and its expenses incurred on her behalf while it represented her as a reasonable basis for the fees she should be awarded.[11] Indeed, in Martha's petition for an award of attorney's fees, she argued that the $1.4 million in attorney's fees she incurred from Katten were "fair and reasonable."[12] As the fee petition explained, "[t]his case involved complex and difficult factual and legal corporate law issues requiring extensive legal and factual analysis and work by counsel, as can be expected in a derivative and double derivative action."[13] And, as Kusper stipulated in his sworn affidavit in support of Martha's petition, the fees billed by Katten "were reasonable and necessary under the circumstances."[14] Relying on Katten's invoices, the Court of Chancery awarded Martha $275,000 in fees for the minor benefits that she obtained on behalf of the Sutherland Lumber Companies in 2007 when, as a result of Martha's and Katten's

---

[11] Kusper, who was deeply involved with Martha's litigation while at Katten, argued the fee application on Martha's behalf.

[12] App. to Opening Br. at A0133 (Plaintiff Martha S. Sutherland's Petition for an Award of Attorney's Fees and Litigation Expenses).

[13] *Id.*

[14] Aff. of Stewart T. Kusper in Supp. of Plaintiff Martha S. Sutherland's Petition for an Award of Attorney's Fees and Litigation Expenses, at ¶¶ 32, 36, *Sutherland v. Sutherland*, C.A. No. 2399-VCN (Del. Ch. Apr. 1, 2014).

efforts, the Sutherland Lumber Companies amended Perry's and Todd's employment agreements.[15]

Katten then intervened in the action and attached a petition for a charging lien on the entire fee award of $275,000.[16] Katten then moved for summary judgment on its petition and, in February 2016, the Court of Chancery denied Katten's motion because Katten had already been paid for its services that helped produce the benefits for the Sutherland Lumber Companies. The Court of Chancery explained its denial:

> Katten has been paid in full for its invoices based on its work that provided both benefits to the family companies and the basis for the Court's fee award. *In essence, Katten seeks imposition of a charging lien for work which caused no benefit and has no connection to the recovery, other than having occurred in the same litigation.* The Court in *Doroshow* recognized that because a law firm represented a client on a contingent fee basis, "the law firm had not been compensated before its work produced the funds." *Seeking a charging lien for work which produced no benefit when the law firm has already been paid for the work which produced the benefit (whether the benefit for the family corporation or the corresponding fee award) is inconsistent with the theoretical underpinnings of the attorney's charging lien.*[17]

---

[15] Opening Br. of Intervenor Below/Appellant App. at Add. 4 (*Sutherland v. Sutherland*, C.A. No. 2399-VCN (Del. Ch. Feb. 26, 2016)) [*hereinafter* Chancery Opinion] ("Indeed, in making an award of fees to [Martha], the Court relied upon Katten's invoices as sponsored by [Martha].").

[16] Martha claims entitlement to these fees. Neither Kusper nor his new firm has joined in this conflict.

[17] Chancery Opinion at Add. 7–8 (quoting *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336. 342 (Del. 2012)) (emphasis added).

The issue below was decided on Katten's motion for summary judgment, and there are no disputed issues of material fact.[18] As the Court of Chancery noted:

> [Martha] has raised no issues of material fact as to Katten's contention that she owes the firm at least $275,000, the amount of the fee award. There may have been disagreements between Katten and [Martha], but [Martha] has not offered a factual basis for concluding that she was 'overbilled' by an amount that would reduce the amount she owes below the fee award.[19]

Martha does not dispute this finding on appeal.[20] Thus, the sole issue on appeal is whether the Court of Chancery's requirement that a charging lien can only be obtained for unpaid services that directly relate to a client's recovery was a proper prerequisite to impose on Katten's equitable right to a charging lien.

## II.

Although Delaware does not have a statute governing charging liens, Delaware has a long lineage of cases recognizing charging liens as a matter of common law.[21] Two recent Delaware cases address charging liens.[22] In *Doroshow*,[23] this Court confirmed that Delaware recognizes the long-standing

---

[18] This Court reviews summary judgment determinations *de novo*. *ConAgra Foods, Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 68 (Del. 2011). Summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ct. Ch. R. 56.

[19] Chancery Opinion at Add. 5.

[20] Answering Br. at 4.

[21] *See, e.g.*, *Royal Ins. Co. v. Simon*, 174 A. 444, 446 (1934).

[22] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336 (Del. 2012); *Zutrau*, 2014 WL 7013578 (Del. Ch. Dec. 8, 2014), *aff'd*, 123 A.3d 938 (Del. 2015), *reargument denied* (Sept. 17, 2015), *cert. denied*, 136 S. Ct. 1198 (2016).

[23] 36 A.3d 336 (Del. 2012).

common law right of charging liens.[24]  In *Zutrau*, the Court of Chancery adopted the definition provided by Corpis Juris Secundum that a charging lien is "an equitable right to have costs advanced and attorney's fees secured by the judgment entered in the suit wherein the costs were advanced and the fee earned."[25]  Today, we also endorse that definition of a charging lien.

Here, the modifications to Perry's and Todd's employment agreements—which are the basis for Court of Chancery's fee award—were adopted as a result of Martha's and Katten's efforts in the derivative and double-derivative action.[26]  Furthermore, Katten's unpaid fees arose from the same litigation that produced the benefits for the Sutherland Lumber Companies and which led to the Court of Chancery's award of attorney's fees.  Therefore, based on our definition of a charging lien, Katten is entitled to a lien on the entire fee award of $275,000.  The historical rationale for a charging lien—to promote justice and equity[27] by

---

[24] *Id.* at 340.

[25] *Id.* at *1 (quoting 7A C.J.S. *Attorney & Client* § 446 (Westlaw 2014)).

[26] Martha does not dispute that Katten's services helped obtain the benefits for the Sutherland Lumber Companies.  Indeed, she writes in her Answering Brief that "Katten has been paid in full for the litigation services it provided to [Martha] in 2006 through 2008, the services that produced the award as identified by the Chancery Court in its July 2014 Opinion."  Answering Br. at 8.  Similarly, in her opposition to Katten's motion for summary judgment in the Court of Chancery, Martha stated that "Katten has already been compensated fully by [Martha] for services provided to [Martha] in 2006, 2007, and 2008 that resulted in the $275,000 award."  App. to Opening Br. at A1003.

[27] *DiLoreto v. Tiber Holding Corp.*, 804 A.2d 1055, 1056 (Del. 2001) ("The rationale for permitting attorneys to assert a charging lien is the promotion of justice and equity.").

8

compensating the attorney for her efforts[28] and thus encouraging attorneys to provide legal services to clients[29]—also supports this conclusion.

In its decision, the Court of Chancery seemed to read *Doroshow* as standing for a rule that an attorney may only seek a charging lien for fees the attorney incurred that were directly connected to her client's recovery. The Court of Chancery cited *Doroshow*'s finding that, because the law firm in that case represented its client on a contingent fee basis, it was entitled to a charging lien because "the law firm had not been compensated before its work produced the funds."[30] The Court of Chancery reasoned that because Katten had already been paid for the services that led to the benefits for the Sutherland Lumber Companies, it was not entitled to a charging lien. But, *Doroshow* dealt with a charging lien based on a contingency fee, and we held that the law firm was entitled to its agreed 40% contingent fee. Our decision in *Doroshow* did not limit the scope of charging liens in general. Rather, *Doroshow* demonstrates the application of this equitable right to a particular type of fee arrangement, and one fundamentally different than the one between Martha and Katten.

---

[28] *See Zutrau*, 2014 WL 7013578, at *4 ("The rationale underlying the Delaware charging lien cases is compensating the *attorney* for her efforts.").

[29] *E.g.*, *Bero-Wachs v. Law Office of Logar & Pulver*, 157 P.3d 704, 706–07 (Nev. 2007) ("The purpose of [Nevada's charging lien statute] is to secure attorney fees and to 'encourag[e] attorneys to take cases of those who could not otherwise afford to litigate.'" (quoting *Muije v. A North Las Vegas Cab Co.*, 799 P.2d 559, 561 (Nev. 1990))).

[30] Chancery Opinion at Add. 7 (quoting *Doroshow*, 36 A.3d at 342).

9

Here, Katten billed Martha regularly for its services based on the amount of time Katten's attorneys spent on the case and the attorneys' hourly rates. Katten billed Martha for approximately $3.5 million, of which Martha paid roughly $2.7 million. That Katten's services underlying the unpaid fees did not result in any benefit to the Sutherland Lumber Companies does not matter. In the case of hourly billing, unlike with a contingency fee, the total amount that the client is required to pay her lawyer is not based on the client's recovery.[31] In *Zutrau*, the Court of Chancery considered the scope of a charging lien in the context of hourly billing and explained that "[i]t is no secret that litigation is expensive and that the costs of prosecution easily can exceed the recovery."[32] The Court of Chancery found, "that the cost of prosecution conceivably could exceed the recovery does not excuse Zutrau from paying those fees."[33] If, as here, an attorney has unpaid fees that are greater than the client's recovery, the attorney is entitled to a charging lien on the entire recovery. Moreover, the client remains obligated to pay her attorney any remaining unpaid fees. Martha was required to pay Katten its reasonable fees in accordance with their agreement whether she won or lost. Because Martha did not pay Katten for all of its services stemming from the litigation in which Katten produced the only benefits, Katten is entitled to the equitable right of a charging

---

[31] *See Zutrau*, 2014 WL 7013578, at *2.
[32] *Id.*
[33] *Id.*

10

lien on the entire $275,000 fee award.  Finding otherwise would lead to an inequitable result where attorneys with a claim for unpaid fees from litigation—where work had been billed on an hourly basis—could use the equitable right of a charging lien only to recover fees relating to the services that were directly connected to the litigation's beneficial results.

Like other contracts, contracts for the provision of legal services create incentives for parties, including clients.  When a party, such as Martha, agrees to pay hourly fees to prosecute a complex case, she is assuring her counsel that it will not suffer the commercial damage of uncompensated services if it presses her claims as aggressively as she demands and as the law permits.  To permit a client who is a party to such an agreement to escape a charging lien as if she made a strict contingency fee agreement limiting fees to a percentage of recovery is to judicially rewrite the contract at the expense of the attorney and to undermine the traditional purpose of a charging lien.[34]

For the foregoing reasons we reverse the Court of Chancery's decision and remand the matter to the Court of Chancery to enter Katten's charging lien on the entire fee award of $275,000.

---

[34] *See supra* notes 27–28; *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 340 (Del. 2012) (stating the rationale for an attorney's charging lien that "attorneys have a right to compensation for funds recovered by their efforts"); *see also* 7A C.J.S. *Attorney & Client* § 523 (Westlaw 2016) ("The rationale for permitting attorneys to assert a charging lien is the promotion of justice and equity and that a successful litigant should not be allowed to appropriate the whole of a judgment in favor of the client without paying thereout for the services of an attorney in obtaining such judgment.").