IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CAPSTACK NASHVILLE 3, LLC, | § | |
| CSP N3 PARTNER LLC, | § | No. 50, 2022 |
| CAPSTACK PARTNERS LLC, and | § | |
| DAVID BLATT, | § | Court Below—Court of Chancery |
| | § | of the State of Delaware |
| Plaintiffs Below | § | |
| Appellants, | § | C.A. No. 2020-0519 |
| | § | |
| v. | § | |
| | § | |
| NED H. COHEN, | § | |
| NHCOHEN PARTNERS LLC, and | § | |
| NHCOHEN CAPITAL LLC, | § | |
| | § | |
| Defendants Below, | § | |
| Appellees, | § | |
| | § | |
| WILKS LAW LLC, | § | |
| | § | |
| Interested Party Below, | § | |
| Appellee. | § | |

Submitted: August 10, 2022
Decided: October 24, 2022

Before **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES** Justices.

# **O R D E R**

On this 24th day of October 2022, it appears to the Court that:

(1) In this appeal we consider whether a law firm may assert an attorney's charging lien for services rendered against a settlement fund that the client recovers through litigation, but which was not incorporated into a judgment, judicial decree, or court-ordered award. The client is the Plaintiff-Appellant Capstack Nashville 3

LLC, et al. ("Capstack"). Capstack contends that an attorney's charging lien can "attach" only to a judgment, judicial decree, or court-ordered award.[1] It cannot, Capstack contends, be asserted against a settlement fund where the settlement agreement which creates the fund has not been incorporated into a judgment, judicial decree, or court-ordered award.[2] The law firm asserting the charging lien is Wilks Law LLC ("Wilks Law"). It contends that a judgment, judicial decree, or court-ordered award is not required and that Capstack's settlement fund itself can be the subject of a charging lien.[3] The Vice-Chancellor agreed with Wilks Law, awarded a charging lien in its favor against Capstack's settlement fund in the amount of $125,229.35, and ordered Capstack to pay to Wilks Law "any and all funds plaintiffs have received or will receive in settlement of this action in satisfaction of the charging lien."[4] For the reasons that follow, we affirm.

(2) Capstack was an investor in certain multifamily apartment complexes in Nashville, Tennessee. Disputes arose and Capstack retained Wilks Law to represent it in dealing with those disputes. Capstack agreed to pay Wilks Law attorney's fees at hourly rates and to reimburse Wilks Law for expenses paid on Capstack's behalf. On July 3, 2019, Wilks Law initiated an arbitration on behalf of Capstack against

---

[1] Opening Br. at 8.
[2] *Id.* at 10.
[3] Answering Br. at 13, 18.
[4] Chancery Order at add. to Opening Br. at 37.

2

Ned H. Cohen, a real estate broker, and entities affiliated with him.[5] On May 11, 2020, an arbitrator entered an award in Capstack's favor in the amount of $220,220.70. Shortly after the arbitrator entered the award, the Wilks Law attorney assigned to represent Capstack left the firm. Capstack decided to retain a different law firm, one that had, it appears, not been previously involved in Capstack's matter, to represent it in any further proceedings. At that time, Capstack owed Wilks Law $125,229.35 in unpaid attorneys' fees and unreimbursed expenses from the Cohen arbitration.

(3) On June 26, 2020, Capstack's new counsel filed an action in the Court of Chancery to have the arbitration award confirmed. On September 14, 2020, counsel for Capstack wrote to Chancellor Bouchard indicating that the case had been settled. Counsel's letter stated that the settlement included "an agreement to file a notice of voluntary dismissal with prejudice upon completion of terms of settlement or a stipulation of judgment in the event of default on the terms of settlement[.]"[6] On October 15, 2020, Wilks Law filed a notice in the action that it was asserting a charging lien "on any and all sums to be paid to Plaintiffs in satisfaction of the [Arbitrator's] Award by judgment, settlement or otherwise."[7] This notice was followed later by a Motion to Enforce an Attorney's Charging Lien.

---

[5] This was one of two arbitrations initiated by Wilks Law on Capstack's behalf. The other arbitration is not relevant to this appeal.
[6] App. to Opening Br. at A29.
[7] *Id.* at A32.

(4) At a hearing on the Motion to Enforce an Attorney's Charging Lien, the Vice-Chancellor determined that the settlement referred to in the letter to Chancellor Bouchard involved an agreement that Capstack would be paid money from the sale or refinancing of one or more of the Nashville properties. She further determined that such sale or refinancing had not yet occurred when Wilks Law put Capstack on notice of its assertion of a charging line. Her ruling in Wilks Law's favor followed from these findings.

(5) Capstack's contention on appeal is succinctly set forth in its Summary of the Argument in its opening brief as follows:

> The Court of Chancery entered an attorney's charging lien below, but there was no judgment, award, or judicial decree entered against which the charging lien can attach. As a result, there is nothing upon which the charging lien can be executed or satisfied and the charging lien is a legal nullity. There is no legal basis to support what the Court of Chancery did and this Court should reverse.[8]

(6) Capstack relies upon this Court's opinion in *Katten Muchin Rosenman LLP v. Sutherland* as support for its position.[9] In that case this Court:

> embrace[d] the definition that a charging lien is "an equitable right to have costs advanced and attorney's fees secured by the judgment entered in the suit wherein the costs were advanced and the fee earned," which had been previously adopted by the Court of Chancery in its earlier decision in *Zutrau v. Jansing*.[10]

---

[8] Opening Br. at 2.
[9] *See id.* at 8-9.
[10] 153 A.3d 722, 723 (quoting 7A Kristina E. Music Biro, J.D., et.al., *Corpus Juris Secundum* Attorney & Client § 523 (2016)) (en banc).

Capstack also relies on definitions of an attorney's charging lien from legal dictionaries and on comparisons of an attorney's charging lien with other types of liens, such as mechanic's liens or mortgages which attach to a legally tangible thing or *res*.[11]

(7) The issue Capstack raises here was not raised in *Katten*. In that case the Court of Chancery awarded the plaintiff legal fees and expenses in a derivative action.[12] *Katten* asserted a charging lien against that award, and the Court of Chancery limited the attorney's charging lien to amounts which were "directly relate[d] to [the] client's recovery."[13] It excluded from the charging lien work which had "no connection to the recovery, other than having occurred in the same litigation."[14] This Court stated that "the sole issue on appeal is whether the Court of Chancery's requirement that a charging lien can only be obtained for unpaid services that directly relate to a client's recovery was a proper prerequisite to impose on Katten's equitable right to a charging lien."[15] This Court reversed the Court of Chancery's judgment as too narrow and one that "undermines the utility of a

---

[11] *See* Opening Br. at 9-11.
[12] 153 A.3d at 724-25.
[13] *Id.* at 725-26.
[14] *Id.* at 725 (citation omitted) (emphasis omitted).
[15] *Id.* at 726.

charging lien in encouraging counsel to provide legal services to clients by ensuring them that their contractual right to a fee will be upheld by the judiciary."[16]

(8) A treatise cited by the Court in *Katten* does not limit the application of charging liens to "judgments."[17] We think that Capstack places undue emphasis on the Court's use of the word "judgment" in *Katten* and that this Court's opinion in *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp.* is of greater precedential value in this appeal. In that case, the Doroshow law firm filed a personal injury action against a tortfeasor on behalf of an injured party.[18] Doroshow's fee agreement with its client provided that the law firm would receive a contingent fee of 40% plus costs from any recovery.[19] The case was settled for $19,671.49, which was paid in full in two payments.[20] The settlement checks were made payable to both the Doroshow law firm and the plaintiff.[21] The law firm deducted its fee and deposited the balance in its escrow account.[22] Nanticoke asserted a hospital lien for the plaintiff's medical expenses against the entire $19,671.49.[23] Doroshow filed an interpleader action against Nanticoke and the

---

[16] *Id.* at 723.

[17] *See id.* at 623, 28; 7A Kristina E. Music Biro, J.D., et.al., *Corpus Juris Secundum* Attorney & Client § 523 (2022) ("A charging lien is the equitable right of an attorney to have fees and costs due the attorney for services rendered in a particular suit secured by the judgment or the recovery in that suit." (emphasis omitted)).

[18] 36 A.3d 336, 339 (Del. 2012) (en banc).

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at 338-339.

plaintiff seeking to release the amount remaining after deduction of its fee, the sum of $11,619.47, to the Superior Court for distribution.[24]  The Superior Court ruled that Nanticoke's hospital lien took priority over Doroshow's attorney's lien and ordered that the full $19,671.49 be paid to Nanticoke.[25]

(9)  On appeal, this Court found "that the right of an attorney to a charging lien is well established at common law."[26]  The Court quoted with approval the definition of an attorney's charging lien appearing in *A Treatise on Attorneys at Law* by Mark Thornton as "the right of an attorney at law to recover compensation for his services from a fund recovered by his aid, and also the right to be protected by the court to the end that such recovery might be effected."[27]  This Court ultimately reversed the judgment of the Superior Court, finding that the Doroshow law firm had an attorney's charging lien which had priority over Nanticoke's hospital lien.[28]

(10)  In *Doroshow,* no mention is made of a judgment in the personal injury case and a fair reading of the opinion creates a clear inference that the settlement creating the settlement fund was an "out-of-court" settlement.[29]  Capstack seeks to distinguish *Doroshow* on the ground that the facts are different in that the settlement proceeds there were paid directly to the law firm and the issue in the case "was

---

[24] *Doroshow*, 36 A.3d at 339.
[25] *Id.* at 339-40.
[26] *Id.* at 340.
[27] *Id.* (quoting 2 Edward Mark Thornton, *A Treatise on Attorneys at Law* § 578 (1914)).
[28] *Id.* at 339.
[29] *Id.*

simply . . . whether the law firm or the [hospital] had priority in terms of which lien should be discharged first."[30]  However, the Court first discussed attorney's charging liens in some detail as a threshold matter and arrived at the conclusion that Doroshow had a valid attorney's charging lien on the settlement proceeds.[31]

(11)  Although the precise issue involved in this appeal was not expressly raised in *Doroshow*, we are persuaded that *Doroshow* supports the view that an attorney's charging lien can be asserted against a settlement fund such as the one recovered by Capstack in this case, and that charging liens are not restricted to judgments, judicial decrees, or court-ordered awards.  We are also persuaded that the use of the word "judgment" in *Katten* was not intended to exclude settlement recoveries which are not reduced to judgment from attorney's charging liens.  After having thoroughly reviewed the authorities cited by both parties, we conclude that a Wilks Law attorney's charging lien could be awarded against Capstack's settlement recovery as ordered by the Court of Chancery.

NOW, THEREFORE, IT IS THE ORDER of the Court that the judgment of the Court of Chancery is AFFIRMED.

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice

---

[30] Opening Br. at 13.
[31] *Doroshow*, 36 A.3d at 240-42.

8